The next case today is Jorge A. Diaz Mayoral et al. v. FOMB, Financial Oversight and Management Board, Appeal No. 19-2231 and Appeal No. 20-1279. Attorney Diaz, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. May it please the Court, Monique Diaz Mayoral, on behalf of Appellants, Mr. Fraud Escudero and Mr. Diaz Mayoral, I respectfully request to reserve two minutes for rebuttal. Yes, you may have it. The most important reason why this Honorable Court of Appeals should reverse the District Court's ruling is because it is inherently unfair that the Commonwealth through the Board may have a claim against beneficial owners of Commonwealth bonds, but simultaneously the Commonwealth claims that said individual investors may not have standing to bring a commonwealth. It is an equitably untenable position that this Court should reject, especially because the plan provides for the Commonwealth to pay— Ms. Diaz, we are not a jury. Do not make arguments to us about equity when the question is whether the Title III Court was correct in saying that you have no standing as owners of mutual fund shares against the Commonwealth because it issued bonds. So that is argument one. Then you have argument two, which has to do with your effort to belatedly introduce a new theory of recovery based on Puerto Rico's personal injury case law. Address those. Okay. So, as to the question of standing, this question should be certified because there is insufficient You did not ask for certification in the Title III Court. Yes. Well, we don't usually certify when no request is made until somebody loses and comes up on appeal to us. All right. It's not clear to me whether your certification argument goes only to the second theory of personal injury or whether it goes to the first theory as well. Okay. In the objection originally filed by the Board, the Board did not cite a single case under Puerto Rico law. However, the cases that the Board has cited to establish a lack of precedent of standing, they are actually in favor of the appellants. For example- Can you cite one case that holds for the position that you're urging here today that an investor in a mutual fund has a right to sue the investment mechanism? Can you cite one case anywhere in this country? Okay. So, one of the cases that were cited by the Board in their reply to the response today that was filed two days before the hearing, they cited the case of Gordon, which is Gordon vs. Fundamental Investors 362 F sub 41. It's from the Southern District of New York, 1973. In that case, the court did recognize that there was a possibility to present a claim if they suffered a personal loss. The individual investors do suffer a separate and independent loss because they may suffer not only the loss of value in their investment, but also the income when the repayment of the bond is stopped. That is separate and distinct from the loss that the mutual bond may suffer because the mutual fund charges a fee based upon the value of the funds held. Why isn't there cause of action against the mutual fund itself? I'm sorry, I didn't hear you? Why isn't there cause of action against the mutual fund itself as opposed to the investment vehicle? If the Commonwealth were to proceed exclusively against the mutual fund, then they would not be able to recover the principal and interest payments that were received by individual investors, not by the mutual fund. The mutual fund only received the fees. For example, the Commonwealth filed several adversary proceedings against beneficial owners to disgorge the principal and interest payments that were received by the beneficial owners. Those are adversary proceedings 1900-21 through 1900-28. Judge Woodcock asked you a question. I take it your answer is yes, in theory, we have a cause of action against the mutual funds. We just don't think we're going to recover enough in any such action to make it worthwhile. Is that what you're saying? I believe it. I'm not sure that that's exactly what I'm trying to say. What I'm trying to say is that the individual investors do have, under Puerto Rico law, a direct claim against the board. Evidence of that is that the board has gone against individual investors. One of the cases that they cited, which is First Bank, it's a case of the Puerto Rico Appellate Court, which does not set precedent. It does recognize that when the adverse party has a claim against you, you have a claim against them, a direct claim, even when there's a corporation in between, even when you're the shareholder of the corporation. What I'm saying is yes, I believe that there is a direct claim. You think the FOMB has a direct claim against your clients. That's what you've just argued. Therefore, it's only fair that you have a direct claim against them? That is established under Puerto Rico law. Has FOMB sued your clients? Have they ever indicated they intend to sue your clients? They have not said that they intend to sue my clients in particular, but the disclosure statement does say that they can file additional adversary proceedings to avoid, to disgorge payments of principal interest against additional defendants that are not the ones that they have already filed against. I believe Judge Kayada had a question. Yes. Ms. Diaz, could you, back in response to a question that Judge Woodcock asked, could you just walk me through in concrete form your theory of personal injury? Suppose the mutual fund invests in Acme bonds and Acme is supposed to pay $100 back to the mutual fund. The mutual fund will keep 3% of that and pay the rest back to your clients. Then Acme doesn't pay the $100. The mutual fund would then sue Acme to get the $100. Assuming it won the suit, you would then get all but 3% of that, just as you would have had Acme performed. What am I missing that you say would constitute a personal injury to your clients? Okay, so these bonds, which are under the Puerto Rico Investment Act, they do not get a part of the principal and interest payments. They get a fee based on the value of the assets that they're managing. Under that scenario, the recovery would not go to the mutual fund at all. It would completely go to the individual investors, which are the beneficial owners of said bonds. Are you saying that the mutual fund couldn't sue over the breach of a duty by the investment vehicle? No, they could sue and they do represent an agent of the beneficial owners, which are the individual investors, so they do have that ability to sue Acme Corporation. What I'm saying is that the recovery would not go to the mutual fund. The recovery would be received by the individual investor. Whether you could sue or not, you'd end up in the same place whether you could sue or not, wouldn't you? I'm not sure what the question that you're asking is. Sure, if we simply say the mutual fund has the cause of action, it can bring it. If it recovers, it has to pass along the proceeds to your clients just as it would have had there been performance by the commonwealth. I don't see how your clients are ending up in a different position unless we allowed a double recovery against the commonwealth. I don't think I understand what you're saying, but you're saying no. Well, maybe I wasn't clear enough, but thank you. Okay, sorry. Okay, you have reserved some rebuttal time, I think. Yes. Okay. Thank you, Attorney Diaz-Mayoral. You may mute your audio and video at this time. Attorney Steve Ma, if you could please unmute your device, introduce yourself on the record, and proceed. Good morning. May it please the court. Steve Ma, Proskauer Rose LLP on behalf of AppLE, the Oversight Board. The main issue before this court is whether appellants as investors in mutual funds are allowed to submit claims against the commonwealth based on their investment in mutual funds that purport to own Puerto Rico bonds. The court should affirm the orders of the district court disallowing such claims and denying reconsideration for three principal reasons. First, appellants do not have standing as investors in mutual funds to assert a proof of claim on behalf of the mutual funds. Second, appellants' purported direct claim under Puerto Rico's general negligence statute was not timely raised and therefore forfeited. Nonetheless, such claim is not viable because appellants ultimately seek to assert a claim derivative of the mutual funds under the negligence theory. Finally, appellants' miscellaneous arguments regarding access to transcript and the Rule 59e standard, among other things, fail to show the district court abused its discretion in denying reconsideration or that its factual findings underlying those decisions were clearly erroneous. With respect to the first reason, the district court correctly held investors in mutual funds do not have standing to assert a claim on behalf of such funds. In the first instance, it is the claimant's burden to establish standing to file a proof of claim. Pursuant to the Bankruptcy Code and the Bankruptcy Rules, only creditors of the commonwealth, that is, those with enforceable rights to payment against the commonwealth, can file proofs of claim. Here, appellants filed proofs of claim whose sole basis was, quote, investment in mutual funds, end quote. And appellants did not provide further basis for their claim when asked to clarify whether they owned commonwealth securities, instead reiterating the basis for their claim as investment in mutual funds. However, as noted in our brief, a mutual fund is a distinct entity that owns securities in its portfolio, not the individual investors. And therefore, the fund is the entity holding the enforceable right to payment from the commonwealth. In particular, First Bank Puerto Rico Court of Appeals case supports this proposition, which notes that a corporation is a creation of law different from the shareholders, and shareholders do not own the corporation's assets. And the Puerto Rico Court of Appeals did cite a number of Puerto Rico Supreme Court cases to support this proposition. And furthermore, in Appellants Appendix page 70, the prospectus for one of the funds appellants purports to own, the prospectus notes that the fund is a corporation organized under  And the prospectus further notes that an investment in the fund is not equivalent to an investment to the underlying securities in the fund, end quote. And that's Appendix page 68 and page 70. So this concept is consistent with the cases we cite in our brief regarding the separateness of the fund and its investors. So what's truly at issue here is a third-party dispute between the mutual fund and appellants, its investors, as illustrated in the Second Circuit's decision in Refco. The Second Circuit in Refco held that investors in a hedge fund lack standing to enforce the fund's rights in the bankruptcy case. And if the fund failed to protect the interests of its investors, the investors' recourse lie outside the bankruptcy case. And in particular, the Second Circuit noted the bankruptcy court is a forum where creditors and debtors can settle their disputes with each other. And any internal dispute between a creditor and that creditor's investors belongs elsewhere because they would otherwise frustrate the bankruptcy code's goal of a speedy and efficient reorganization. So here, appellants noted in their papers, notably the response below, that they filed their proofs of claim, quote, in an abundance of caution in case the mutual funds did not timely file the corresponding proof of claim. And that's at Appendix 41. So what should have happened here was appellants should have contacted the mutual funds to address the filing of a proof of claim. A holding otherwise would frustrate the bankruptcy code and PROMIS' goal of a speedy and efficient debt readjustment because now the debtors would receive an influx of proofs of claim both from investors and the mutual funds. And then it would be up to the debtors to clean up its claims register by determining what claims are duplicative and which ones should be allowed, all at the expense of the debtors and its resources that could otherwise be used to pay creditors, and merely to resolve a dispute between the mutual funds and its investors. So with respect to the second reason why this court should affirm the district court's orders... Five minutes remaining. Appellants purported direct claim under the Puerto Rico negligence statute was forfeited when they did not raise the argument until their motion for reconsideration. And appellants never identified the negligence statute as a basis for payment in their proof of claim. Furthermore, appellant's statement below in the response to the claim objection indicates they never intended to assert a claim beyond any belonging to the mutual funds. They noted in their proof of claim, again, that they filed their proof of claim in an abundance of caution in case the mutual funds did not file the claim themselves. So for that reason, the appellants forfeited any argument of a direct claim. Nonetheless, appellant's claim is meritless because it ultimately is derivative of the mutual funds claim, which arose pursuant to a commercial transaction. And as noted in First Bank, direct actions are those which an injury to the shareholder is distinct from an injury to the corporation. And here the injury is the same between appellants and the mutual funds. That is, economic losses resulting from investment in bonds... Mr. Monn, this line of argument surprises me. It suggests that the mutual funds could have some form of personal injury action, and surely that's not the case. I thought you had cited to us a Justice Breyer prior opinion from the First Circuit that said, no, the personal injury statute just doesn't apply to commercial transactions. The inference being that this essentially, as a matter of Puerto Rican law, totally falls outside the scope of their definition of personal injury. And then you would go on to say, and no Puerto Rican court has ever recognized any such claim, and that's why it doesn't have any merit. Right, that's correct, Your Honor. The argument I was trying to make is that the mutual funds do not even have a claim under the negligence statute for the reasons stated in Benton Court. And because appellants are trying to assert a claim derivative of the mutual funds, for two reasons. One, they do not have standing to assert such a claim because it is derivative. And two, because there's no such claim because the mutual funds don't even have a claim under Benton Court, under the negligence statute. Ms. Diaz seems to be trying to say that her clients have their own direct claim of personal loss in some respect. So while they are framing it as a direct claim, I believe that First Bank noted that their claims are those which injuries are distinct from the corporation. But here, while appellants frame their theory as a direct claim, it's really a derivative claim because the injury here is both the same. It's basically recovery of principle and interest on the bonds. So my response is that they do not have a direct claim, but it's really derivative of the mutual funds. And I assume from your answer you would go on to say this poses the same risk of duplicative recoveries and is contrary to the goals of the bankruptcy statute. Whether it is viewed as their first cause of action or their belated attempt to bring it as a personal injury cause of action. Is that correct? That's correct. That's correct. And so finally, with respect to appellant's miscellaneous arguments, they failed to show that the district court abused its discretion in denying reconsideration. In particular, with respect to appellant's Rule 59E argument, they moved pursuant to Rule 59E for reconsideration, yet now argue that Rule 59E is not applicable. With respect to the appellant's argument regarding the requirement to hold a new hearing on reconsideration, Bankruptcy Rule 3008 does not require a hearing to be held if the motion is denied, which the advisory committee's note makes clear. And appellant's reference to the Kastner case does not change this reading, because notably, the advisory committee was aware of Kastner's warning against a restrictive reading when it referenced that very case in its note, yet went on to state that a hearing on notice is not required when reconsideration is denied. And finally, with respect to appellant's argument regarding access to the transcript, they failed to demonstrate as clearly erroneous the district court's factual finding that it was appellant's own inaction that prevented them from access to the transcript. So there was no prejudice here. And so for those reasons, this court should affirm the district court's orders. And I'm happy to address any further questions this panel may have. I have none. No. Okay. We'll hear the reserved rebuttal argument. Thank you, counsel. Thank you, Judge. Attorney Diaz, if you could unmute your audio and video at this time. And reintroduce yourself on the record. You have two minutes rebuttal. Attorney Monique Diaz-Mayoral for appellants, Mr. Fraud Escudero and Mr. Diaz-Mayoral. As to the argument that the personal claim was forfeited, it was argued at the hearing that the appellants had a claim for a separate injury, and the appellants requested additional time. They requested that the consideration of their claim be continued to the next hearing, which was denied by the court, even though it was granted to other similar claims that were under the same objection being considered at that hearing. Ms. Diaz, isn't there a value in having a proof of claim articulate clearly the basis for the claim? And no such personal injury theory was asserted in the proof of claim, nor was there ever an amendment to the proof of claim. Isn't that correct? Yes, that is correct. However, I do want to point out that with the response that was filed on September 4, a copy of each of their portfolios, which is part of their individual injury, for example, APP 47-56 and 57-66, specifically on APP 47 is a chart that is particularly illustrative and shows the diminution in value. Because that evidence was in the docket during the hearing, and during the hearing it was argued that there was a personal injury, that's why we argue that that argument is not forfeited. As to the question on the double recovery, we don't see a double recovery because if the bond is paid 100%, then there is no personal injury claim by the individual investors. When the bond is not paid, then it is the individual investor that suffers the loss, not the mutual fund. Anything else? No, I believe that's it. Thank you, Your Honors, for the opportunity to be heard. Thank you, Ms. Diaz. Thank you. That concludes the argument in this case. Attorney Diaz and Attorney Ma, you should disconnect from the hearing at this time.